**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ERICA POLK,

      Plaintiff,

v.             CIVIL ACTION NO. 5:13-cv-14224

TOWN OF SOPHIA, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

  The Court has reviewed the Defendants' *Joint Motion to Dismiss* (Document 13) and accompanying *Memorandum in Support* (Document 14) (Defs.' Mot.). [1] After careful consideration of the complaint and the parties' written submissions, the Court finds that the Defendants' motion should be granted in part and denied in part.

**I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY**

  On June 13, 2013, the Plaintiff, Erica Polk (Polk), filed a complaint in the United States District Court for the Southern District of West Virginia against the Defendants, (1) Town of Sophia, West Virginia, (2) Town Council of Sophia, (3) Sophia Police Department, and (4) John Phillip Stevens, II (Stevens), individually and in his capacity as a Sophia police officer. (*See* Complaint.) The Plaintiff alleges that "on or about October 15, 2013 (sic)," Stevens, while employed and acting as a Sophia Police Officer, sexually assaulted Polk and forced her to perform oral sex. (Compl. ¶¶ 16-24.) Polk was handcuffed and placed under arrest due to an earlier

---

[1] Only Defendants' Town of Sophia, Town Council of Sophia, and Sophia Police Department joined in and filed the *Joint Motion to Dismiss*. The docket reveals that Defendant John Phillip Stevens, II, did not file a motion or memorandum. Thus, any mention of "Defendant" herein pertains to the three Sophia Defendants only.

dispute with a neighbor, and was being transported to the Southern Regional Jail post-booking at City Hall. (*Id.* ¶¶ 17-18.)   Specifically, the Plaintiff alleges that while handcuffed and in the back of a police cruiser, Stevens, alone, "told Plaintiff to show him her breasts," and even though "she did not want to" she eventually complied and Stevens "groped Plaintiff's breast with his hand while they were stopped at a red stop light." (Compl. ¶¶ 20-21.)   The Plaintiff alleges that Stevens told her that "he could help her situation by simply writing a ticket which would allow her to go home rather than go to jail," and thereafter "drove his cruiser to a gated area off the main roadway and ordered Plaintiff … to perform oral sex on him." (*Id.* ¶ 23.)   The Plaintiff alleges that the Defendant "turned off his camera that was mounted in the cruiser" before he allegedly sexually assaulted her. (*Id.*)   While this occurred, the Plaintiff states she was "crying, emotionally distraught, and begging [Stevens] not to do anything to her." (*Id.*)   After the alleged incident, the Plaintiff contacted the West Virginia State Police and "filed a complaint against [Stevens]." (*Id.* ¶ 26.)

As a result of the alleged assault, the Plaintiff suffered "severe bodily injury, emotional distress, humiliation, embarrassment, mental distress and loss of personal dignity." (Compl. ¶ 48.) Consequently, she asserts five (5) causes of action: (1) violations of the Fourth and Fourteenth Amendments to the United States Constitution, (2) assault and battery, (3) negligent/reckless infliction of emotional distress, (4) negligent supervision/training, and (5) negligence. (*Id.* ¶¶ 27-50.)   The Plaintiff seeks "all damages, including but not limited to, emotional distress, humiliation, mental anguish, embarrassment, and future mental anguish," and "other compensatory and general damages for which Defendants are liable." (*Id.* ¶ 51.)   She also seeks an award of punitive damages and attorney fees and related costs. (*Id.*)

On September 5, 2013, the Defendants filed a *Joint Motion to Dismiss* (Document 13). The Plaintiff filed her *Memorandum in Opposition to Town of Sophia and Sophia Police Department's Joint Motion to Dismiss* (Pl.'s Resp.) on September 19, 2013. (Document 17).[2] Thereafter, on September 26, 2013, the Sophia Defendants filed a *Reply to Plaintiff Erica Polk's Memorandum in Opposition to Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(6)* (Defs.' Rep.) (Document 20).

## II.   APPLICABLE LAW

A. *Rule 12(b)(6)*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" (*Id.*)   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

---

2       The Court notes that the Plaintiff did not include the Sophia Town Council when she titled her *Opposition to the Motion to Dismiss*.   The Court finds, however, that the omission was unintended as the Town Council is repeatedly referenced in the Plaintiff's *Opposition*. (*See* Document 17.)

3

However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).   Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.)   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.)   In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.)   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

B. *West Virginia Law*

"The general rule of construction in governmental tort legislation cases favors liability, not immunity.   Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts

must prevail." Syllabus Point 2, *Marlin v. Bill Rich Const., Inc.*, 198 W. Va. 635 (1996). West Virginia Code, Section 29-12A-4, states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Exceptions to this provision are given in Section 29-12A-5(a). Section 29-12A-5(a)(5) states that a political subdivision is immune from liability if a loss or claim results from ". . . the method of providing police, law enforcement or fire protection." The Supreme Court of Appeals of West Virginia held that this phrase refers to "the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." Syllabus Point 4, *Smith v. Burdette*, 211 W. Va. 477 (2002). However, it "does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." *Id.* at Syllabus Point 5.

Further, West Virginia Code, Section 29-12A-5, states that an employee of a political subdivision is immune from liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

*C. 42 U.S.C. § 1983*

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

5

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."   A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

Further, "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  *See also Iqbal*, 556 U.S. at 693, (Souter, J., dissenting) (stating that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.")

D.  *Punitive Damages*

West Virginia Code, Section 29-12A-7, provides, in relevant part, that

> in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:

> (a) . . . an award of punitive or exemplary damages against such political subdivision is prohibited.

### III.   DISCUSSION

The Defendants seek dismissal of the Plaintiff's complaint on multiple grounds, including that: (1) the Town Council of Sophia and Sophia Police Department are not separate legal entities capable of being sued; (2) the Sophia Defendants are not vicariously liable for any intentional Constitutional violation by Stevens or any intentional acts such as assault, battery, and negligent/reckless infliction of emotional distress; (3) the claim of negligent supervision/training fails because the impropriety of Stevens alleged actions is wrong to all, even without training; and (4) the Plaintiff failed to plead a cause of action for simple negligence. (Defs.' Mot. pp. 3-13.) The Defendants also point out that the Plaintiff cannot recover punitive damages against the Sophia Defendants because they are all political subdivisions immune from punitive damage awards. (*Id.*)   The Court considers the parties' arguments below.

#### A.   *Stand-Alone Entities*

As an initial matter, the Defendants argue that the Town Council of Sophia and the Sophia Police Department are not capable of being sued because they are divisions and instrumentalities of the Town of Sophia, West Virginia. (Defs.' Mot. p. 3.)   For support, they cite to West Virginia Code § 29-12A-3(b) and its definitions of "municipality" and "political subdivision." (*Id.*)   In response, the Plaintiff points out that the "legal status" of the Town Council of Sophia and Sophia Police Department "remains an open one" and that "the defendants surely have the burden of establish (sic) the proposition that neither entity is a separate legal entity capable of being sued, nor both should be dismissed as a matter of law." (Pl.'s Resp. p. 6.)   The Sophia Defendants reply that neither are stand-alone entities and that W.Va. Code § 29-12A-3(b), and its "plain, unambiguous language" make it "clear that neither the Town Council nor the Police Department are separate

7

entities susceptible to suit in this matter." (Defs.' Rep. p. 2.)   W. Va. Code § 29-12A-3(b) defines a municipality as "any incorporated city, town or village and all institutions, agencies or instrumentalities of a municipality" while W. Va. Code § 29-12A-3(c) defines a political subdivision as "any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one of more counties, cities or towns … ." W. Va. Code § 29-12A-3(c).

The Court agrees with the Defendants' assertion that the Town Council of Sophia and Sophia Police Department are not separate entities capable of being sued. *See Tofi v. Napier*, 2011 WL 3862118 *4 (S.D. W. Va. 2011) (Johnston, T.) (unreported).   The Town Council of Sophia and Sophia Police Department exist only to serve the Town of Sophia and are, therefore, instrumentalities or extensions of the Town of Sophia.   Thus, all counts contained in the Plaintiff's complaint against the Town Council of Sophia and Sophia Police Department should be dismissed with prejudice.[3]

*B.*   42 U.S.C. § *1983 Claim*

The Sophia Defendants next argue that a claim pursuant to 42 U.S.C. § 1983 for a constitutional deprivation by Stevens cannot lie against the Town of Sophia. (Defs.' Mot. p. 4.) They note that municipal liability forms the basis of a constitutional violation "only when the

---

3       The Court notes that while the claims against the Town Council of Sophia and the Sophia Police Department are dismissed from this suit with prejudice, any alleged act or omission of either, resulting in harm to the Plaintiff, and which constitutes a viable claim, could result in damages against the Defendant Town.   Similarly, Plaintiff may not be without recourse for the alleged conduct of Stevens.   W.Va. Code § 29-12A-5(b) states, in part, that "[a]n employee of a political subdivision is immune from liability unless one of the following applies … (1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner: or (3) [l]iability is expressly imposed upon the employee by a provision of this code." W.Va. Code § 29-12A-5(b)(1)-(3).   Having found that all counts of the Complaint are dismissed with prejudice against the Defendants Town Council of Sophia and Sophia Police Department, the remaining discussion in the Court's Memorandum Opinion and Order relates solely to the Town of Sophia.

policy or custom is (1) fairly attributable to the municipality on its 'own,' … and is (2) the 'moving force' behind the particular constitutional violation." (*Id*.)   For support, the Sophia Defendants point the Court to the reasoning underlying *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Defs.' Mot. p. 4)   The Sophia Defendants argue that under *Monell*, municipalities may not be held liable solely for the acts of others, but can be held liable when execution of a policy or custom causes the injury. (*Id*. at 7-8.)   They argue that because the Plaintiff only asserted that the Defendants had a custom or policy of "permitting the sexual harassment, assault and battery of detained individuals, including Plaintiff," the Plaintiff has failed to state a claim upon which relief can be granted based upon the conclusory nature of her pleading. (*Id*. at 8.)

The Plaintiff responds that "Ms. Polk [pleaded] in her complaint everything relevant and material that she knows about the incident." (Pl.'s Resp. p. 9.)   The Plaintiff objects to the Defendants' characterization that "there would have been no reason for [Stevens] to have allegedly driven to an area off of the main road and [turned] off his cruiser camera to engage in sexual acts with the Plaintiff" if there was, in fact, a custom or policy of allowing sexual harassment. (*Id*.) The Plaintiff then sets forth, albeit for the first time, a "suggestion" of the allegations contained in her complaint, stating:

> [w]hat she suggests by pleading these facts is that defendants facilitated her injuries by (a) allowing male Sophia police officers to transport female prisoners to the jail by themselves, with no supervision; and (b) allowing officers to shut off cameras which, simple common sense would suggest, could well facilitate wrong doing. Ms. Polk asserts that defendant (sic) negligently supervised its police officers through its policies of allowing them to turn off their camera and to take female prisoners to the jail without supervision.

9

(*Id*. at 9-10.)  The Plaintiff cites to a recent Oklahoma federal district court case, *Plummer v. Town of Dixon*, for guidance when determining the existence of a municipal custom or policy. The Plaintiff offers the following quote from *Plummer*:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amounting to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions--and the basis for them--of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." Brammer-Hoelter, 602 F.3d 1175, 1189-90 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) and City of Canton v. Harris, 489 U.S. 378, 288-91, 109 S. Ct. 1197, 103 L. Ed. 2s 412 (1989)) (internal quotation marks omitted).

(Pl.'s Resp. p. 10-11.) (mistakes in original).  In sum, the Plaintiff claims that there was an informal custom, or at least deliberate indifference on behalf of the Defendants, in allowing male officers to transport female prisoners unsupervised and to turn off their patrol car camera whenever they chose.

The Defendants reply that, according to Fourth Circuit case law, "custom and usage" may be imparted to a municipality when "the duration and frequency of the practices warrant a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." (Defs.' Rep. p. 3) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)) (citations omitted.)   Thus, the Defendants argue, the Plaintiff, relying solely on her alleged single isolated incident, fails to establish that the Sophia Defendants have adopted a policy with regards to transporting female prisoners and turning off dash cameras, or

that they knew or should have known that this custom or policy was resulting in constitutional deprivations. (Defs.' Rep. p. 4.)   Similarly, the Defendants argue that, under *Rudd v. Tatum*, there has not been a showing of "deliberate indifference" because the Plaintiff fails to grasp the notion that Stevens' conduct was so patently wrong that it was clearly illegal behavior, and thus, no municipality need adopt any policy or custom combating such behavior.   2013 U.S. Dist. LEXIS 111167 (N.D. Fla. May 31, 2013) (Defs.' Rep. p. 5.)   The Court agrees with the Plaintiff.

The Plaintiff has sufficiently pleaded facts which can support a finding of a policy or custom attributable to the Defendants which resulted in her alleged assault.   The Court notes that "municipal liability under § 1983 may not be predicated solely upon a respondeat superior theory [and that] [l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal policy or custom." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citations omitted).   *Milligan* goes on to explain when such a policy or custom may be found, including in "edicts of the city's formal decisionmaking body or in persistent practices of [municipal] officials having the *de facto* force of law."   (Id at 229.) (citations omitted).   Further, "such a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations … or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct … ." (*Id*. at 229-30.)

Accepting all of the Plaintiff's factual allegations set forth in the Complaint to be true, the Court finds that the Plaintiff has pled sufficient facts to survive the threshold 12(b)(6) inquiry. Here, the Plaintiff has alleged a custom or policy of the Town of Sophia with regard to male officers transporting female prisoners to jail without supervision, and allowing officers the ability

to turn off their vehicle's camera unilaterally.   Further, the Plaintiff has alleged that this policy or custom directly led to her injuries.   Thus, the motion to dismiss the Plaintiff's 42 U.S.C. § 1983 claim against the Town of Sophia should not be granted.

### C.  State Law Claims

The Defendants next argue that they are entitled to immunity with respect to Plaintiff's claims for assault, battery and negligent or reckless infliction of emotional distress because Stevens' actions were intentional.[4]   The Defendants cite to West Virginia Code § 29-12A-4(c)(2) for the proposition that "political subdivisions are only liable for the injuries allegedly caused by the negligence of their employees." (Defs.' Mot. p. 9.)   They next assert that the claim for negligent or reckless infliction of emotional distress is "duplicative of the assault and battery claim as the assault and battery claim allows for recovery of emotional distress damages." (*Id*. at 9-10.) The Plaintiff responds that "[s]uch a position is insupportable on account of the existence of the Supremacy Clause … ." (Pl.'s Resp. p. 12.)   The Plaintiff argues that the Supremacy Clause of the United States Constitution likewise permits the Plaintiff to "plead in the alternative as authorized by Federal Rule of Civil Procedure 8(e)." (*Id*. at 13 n. 2.) (citations omitted.)   The Defendants reply that notwithstanding the Supremacy Clause, Plaintiff would still not prevail on her claims because she bases them on a theory of respondeat superior.   They argue that the "Plaintiff alleges that 'violations of her constitutional rights were caused by implementation of a custom, policy or official act of the [Sophia Defendants] …" (Defs.' Rep. p. 6-7.)   The Sophia Defendants also claim that the Plaintiff's "argument would turn on the Sophia Defendant's 'custom' in place at the time of the events alleged by the Plaintiff." (*Id*. at 7.)

---

[4]      The Court notes that the Defendants grouped the claims contained in Counts II and III of the Complaint together for purposes of their argument.   The Court finds, however, that appropriate analysis under the applicable law mandates treating Counts II and III as separate and distinct.

Without resort to the Supremacy Clause, the Court cannot imagine a more intentional act on behalf of Defendant Stevens than the alleged sexual assault.   As deplorable as Stevens' alleged actions were, unfortunately for the Plaintiff, municipalities and political subdivisions are immune from liability for their employees' intentional acts under West Virginia law.   *Mallamo v. Town of Rivesville*, 197 W. Va. 616 (1996).   Thus, the claim for assault and battery contained in Count II against the Town of Sophia should be dismissed with prejudice as it is predicated on an employee's intentional acts.

### D.  *Negligent/Reckless Infliction of Emotional Distress*

The Court finds that the claim under Count III for negligent/reckless infliction of emotional distress (NIED) likewise fails to state a claim upon which relief can be granted.   The West Virginia Supreme Court of Appeals has specifically delineated two instances in which a plaintiff may recover under an NIED theory.   The first deals with a plaintiff who witnesses a serious injury or death of a closely related individual due to the negligence of a third party. *See Heldreth v. Marrs*, 425 S.E.2d 157 (W. Va. 1992).   There, the court held that "a defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a <u>person closely related to the plaintiff</u> suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable." *Id.* 161. (emphasis added).   Here, applying *Heldreth*, the Plaintiff has not alleged sufficient facts for an NIED claim because she did not allege that she had witnessed the death or serious injury of another family member or closely related person.

Next, under the reasoning contained in *Marlin v. Bill Rich Construction, Inc*., 482 S.E.2d 620 (W. Va. 1996), a plaintiff may have a cognizable claim for NIED by suffering severe emotional distress because of exposure to a known dangerous disease.  In that case, the West Virginia Supreme Court held that a "plaintiff must prove that he or she was actually exposed to the disease by the negligent conduct of the defendant, that his or her serious emotional distress was reasonably foreseeable, and that he or she actually suffered serious emotional distress as a direct result of the exposure."  *Id*. at 624.  Here, again, the Plaintiff has not pled any facts, which when accepted as true, would be sufficient to support a finding of NIED under *Marlin*.  This Court has previously held that the *Marlin* "expansion" of the reasoning contained in *Heldreth* is a narrow and stringent one. *See Peters v. Small*, 413 F.Supp.2d 760, 762 (S.D. W. Va. 2006).  Thus, Count III should be dismissed as it fails to allege sufficient facts necessary to support a claim of negligent infliction of emotional distress against the Town of Sophia.[5]

### E.  Negligent Supervision/Training

This Court finds that the claim for negligent supervision/training found in Count IV should be allowed to proceed.  Under West Virginia law, to state a claim for negligent supervision or training, a Plaintiff must show that "[a municipal defendant] failed to properly supervise [an employee officer] and, as a result, [the employee officer] proximately caused injury to the [plaintiff]." *Woods v. Town of Danville, W. V.*, 712 F.Supp.2d 502, 515 (S.D. W. Va. 2010) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 718 (W. Va. 2000).  In *Taylor*, the West

---

5    The Court notes that the Defendants' argument, that the negligent infliction of emotional distress claim is duplicative of the assault and battery claim because both allow emotional distress damages, is now moot as the Court has dismissed the assault and battery claim as well as the negligent infliction of emotional distress claim against the Sophia Defendants.

Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence." *Woods* at 515.

Accepting all of the allegations contained in the Plaintiff's complaint as true, the Plaintiff has asserted a cause of action against the Town of Sophia, in that it "negligently supervised, controlled, monitored and trained Plaintiff (sic) and created an unreasonable risk of harm to Plaintiff, as set forth hereinabove," and as a "direct and proximate result ... Plaintiff suffered severe bodily injury, emotional distress, humiliation, embarrassment, mental distress and loss of personal dignity." (Compl. ¶ 47-48.)   The Plaintiff plainly alleges that the Town of Sophia failed to properly train Stevens and failed to supervise or monitor him, and that those failures directly led to the Plaintiff's injuries.   While the Defendants argue that in "federal civil rights cases, it has been observed that if the impropriety of an action is obvious to all without training, a failure to train a police officer to refrain from taking that action will usually not show deliberate indifference" (Defs.' Mot. at 11.), the argument will not carry the day at this stage of the litigation, when the Court must accept the allegations in the complaint to be true   The Plaintiff claims that basic training or supervision, such as not allowing officers to unilaterally turn off their patrol cameras and mandating that male officers be supervised when transporting female prisoners, would have "protected Ms. Polk from the alleged sexual battery." (Pl.'s Resp. at 15.)   As such, the claim contained in Count IV should not be dismissed.

  *F.  Negligence Claim*

The Defendants next argue that the claim in Count V of the Plaintiff's complaint only "pertains to Defendant Stevens." (Defs.' Mot. at 12.)   They further argue that to the "extent Plaintiff is asserting a respondeat superior argument with respect to the negligence claim, the

alleged conduct of Defendant Stevens was clearly intentional conduct, not negligence, and these Defendants are immune from vicarious liability for intentional acts of an employee." (*Id*.)   The Plaintiff retorts that, basically, she incorporated paragraphs one through forty-eight in Count V, and that these earlier paragraphs contain a "number of allegations of negligence against the non-individual defendants." (Pl.'s Resp. at 15.)   The Defendants reply that, "'[i]n this instance, Plaintiff is making the type of threadbare recitals that are [prohibited] by Rule 8 and Federal jurisprudence." (Defs.' Rep. at 10.)   The Defendants further argue that the Plaintiff has failed to declare "what duties that [the] Sophia Defendants may have owed her, how the Sophia Defendants breached those duties, or how that breach caused the alleged injuries to the Plaintiff." (*Id*. at 11.)

The Court agrees with the Defendants, and finds that even a cursory review of the complaint (including the paragraphs which were incorporated into Count V) reveals that Count V, or the negligence claim, is directed only at Defendant Stevens.   The Court gives primacy to the specific language used by the Plaintiff when framing her complaint, specifically that "[d]efendant Stevens was negligent in the undertaking of his duties as a Sophia Police Officer, as set forth more specifically hereinabove." (Compl. ¶ 50.)   Nowhere in Count V are the Town of Sophia, Sophia Police Department and Town Council of Sophia mentioned.   Nor do the preceding paragraphs establish a general claim of negligence against the Town.   For these reasons, the negligence claim in Count V should be dismissed with respect to the Town of Sophia.   Again, the Court notes that Defendant Stevens did not file his own motion to dismiss nor join the Sophia Defendants' motion, and thus, claims contained in Count I, II, III, and V are still viable as they pertain to Officer Stevens.

### G. *Punitive Damages*

The Defendants finally argue that the Plaintiff is not entitled to recover punitive damages for any of her claims, and cite West Virginia Code § 29-12A-7 for support. The Plaintiff responds that "the mere fact West Virginia State law provides so can have no effect on this case founded in federal law in federal court which seeks a remedy under federal law." (Pl.'s Resp. at 16.) The Defendants reply that under federal law, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." (Defs.' Rep. at 11) (citations omitted) The Defendants argue that "[w]ith regard to any state law claims that are being asserted in this case, according to '29-12A-7(a)' punitive damages against municipalities and subdivisions are prohibited." (*Id.*)

The Court finds that punitive damages are not available for the Plaintiff's § 1983 or state law claims against the Town of Sophia. The United States Supreme Court has held that punitive damages are recoverable in § 1983 claims against individual, but not municipal, defendants. *Smith v. Wade*, 461 U.S. 30, 36 fn 5 (1983) (citing *Newport v. Fact Concerts*, Inc., 453 U.S. 247 (1981)). Likewise, W. Va. Code § 29-12-7(a) instructs that "in any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited." Thus, the Court finds that punitive damages are unavailable to the Plaintiff in the instant suit with respect to the Defendant Town of Sophia.

## IV.    CONCLUSION

WHEREFORE, after careful consideration and based on the findings herein, the Court does hereby **ORDER** that the Sophia Defendants' Motion to Dismiss (Document 13) be **DENIED**

in part and **GRANTED** in part, and that the Plaintiff's Compliant be **DISMISSED WITH PREJUDICE** against Defendants Sophia Police Department and Town Council of Sophia.

The Court further **ORDERS** that the claims contained in **Counts II**, **III** and **V be DISMISSED WITH PREJUDICE** against the Town of Sophia, and that the claims contained in **Counts I** and **IV** remain pending against the Town of Sophia.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        November 27, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

18